# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF KANSAS

KATHRYN MARIE PETTY,               )
                                   )
            Plaintiff,             )
                                   )
      v.                           )        **Case No. 12-4080-RDR**
                                   )
CITY OF TOPEKA,                    )
                                   )
            Defendant.             )
_____)

## MEMORANDUM AND ORDER

In this action plaintiff alleges that she lost a job with the City of Topeka and was not rehired to other positions in violation of: Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; the Kansas Act Against Discrimination ("KAAD"), K.S.A. 44-1001 et seq.; and 42 U.S.C. § 1983. Plaintiff alleges that defendant City of Topeka: discriminated against her on the basis of sex; retaliated against her for engaging in protected opposition to alleged discrimination; made hiring decisions which had an illegal disparate impact against women; and denied plaintiff placement on a reemployment list in violation of her due process rights. This case is now before the court upon defendant's motion for summary judgment. The court finds that the motion should be granted largely because plaintiff's job was permanently eliminated for budgetary reasons and plaintiff was not eligible for other employment in which she expressed interest or for placement on a reemployment list.

I.  SUMMARY JUDGMENT STANDARDS

Summary judgment is warranted if the materials on record show that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.CIV.P. 56(a). The court views "all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-moving party." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007). From this viewpoint, the court attempts to determine whether a reasonable jury could return a verdict in favor of the non-moving party. Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004). "While we view the record in the light most favorable to the non-moving party, that party must still identify sufficient evidence requiring submission to the jury to survive summary judgment." Piercy, 480 F.3d at 1197. In other words, the court may consider evidence produced by the moving party as well as the absence of admissible evidence in favor of an essential element of the non-moving party's claim. Adams v. Am. Guar. & Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000). "If the evidence [in support of a claim] is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986)(interior citations omitted). "[P]urely conclusory allegations of discrimination" which are devoid of "concrete

particulars" are not sufficient to avoid summary judgment. Pucino v. Verizon Wireless Communications, Inc., 618 F.3d 112, 119 (2d Cir. 2010)(interior quotations omitted); see also, Adler v. Wal-Mart Stores, Inc., 144 F.3d 664, 671 (10th Cir. 1998)(non-moving party must set forth specific facts admissible in evidence from which a rational jury could find for non-movant). "Unsubstantiated allegations carry no probative weight . . . evidence, including testimony, must be based on more than mere speculation, conjecture, or surmise." Bones, 366 F.3d at 875.

II. UNCONTROVERTED FACTS

Plaintiff began employment with the City of Topeka in the Topeka Fire Department in 1985. During the course of her career with the Fire Department she progressed through fire fighter, fire inspector and training officer positions. In January 2004, she became Chief of Administration. This was a management position. In September 2004, she became Deputy Chief of Support Services (DCSS). At that time, the Department also had a Deputy Chief of Operations.

In 2009, plaintiff made application for the Fire Chief position. In August 2009, plaintiff was informed that she was not selected for that post and that she was being moved to "performance management" where she would be supervised by Dennis Taylor, who worked outside of the Fire Department. Taylor testified in his deposition that his title at the time was

Performance Management Coordinator and Director of Labor Relations. Doc. No. 147-7, p. 6. Plaintiff was to assist with strategic planning as a "Management Analyst." However, she continued to be paid from the Fire Department budget. A significant part of plaintiff's job was to work on standard operating guidelines for the Fire Department. In addition, she was to work on workforce development training. Plaintiff was concerned about losing her job. When she questioned Taylor about this around November 2009, he told her that she need not be worried and he showed her the budget book which contained her position. At this time, most of the nation was suffering the effects of what has been called the Great Recession.

On November 3, 2009, the City Manager of Topeka, Norton Bonaparte, sent city employees an email informing them that sales tax revenues were $1 million less than budgeted and that cuts would have to be made in the 2009 budget and budget expectations for 2010. On January 29, 2010, Bonaparte sent another email to all city employees stating that to meet the constraints of the 2010 budget some currently filled positions may be eliminated in addition to some currently vacant positions. At that point in time, the city was spending more than its revenues.

Bonaparte, Taylor, Jacque Russell (the City Human Resources Director) and the finance director worked together on

recommendations for reductions in force. Taylor wrote a memorandum for Bonaparte which stated that the 2011 budget would have to provide for $5,100,000 in lower labor costs than 2009 and "will require the elimination of more positions than required by the 2010 Adopted Budget." Taylor consulted with Bonaparte regarding possible reductions in force in the Fire Department. Taylor recommended the elimination of plaintiff's DCSS position to help meet cost savings goals while terminating as few positions as possible. Bonaparte decided to eliminate plaintiff's position as DCSS. Five other filled positions, four of which were management positions (like plaintiff's) were also eliminated. Male and female employees occupied these jobs. Doc. No. 148-9. Taylor stated that the value or "criticality" of each position was considered to determine what positions could be eliminated with as little impact to the City as possible.

On February 11, 2010, plaintiff met with Jacque Russell and Taylor and was informed that her job had been eliminated and her employment was being terminated. Plaintiff has testified in a deposition that during this meeting that the term "laid off" was used by someone to describe the job action. Doc. No. 147-8 at p. 125 of the deposition. She also testified that the terms "eliminated", "terminated" and "fired" were used. Id. at p. 105

of the deposition. It is undisputed that at the meeting, plaintiff was given a letter signed by Russell which stated:

> Due to the continued economic downturn and the salary reductions in the 2010 adopted budget, I regret to inform you that the City of Topeka has to make the difficult decision of permanently eliminating certain positions. This is official notice that due to a permanent reduction in force your position as Deputy Fire Chief is being eliminated effective February 11, 2010.

Doc. No. 147-38. The letter then made reference to the City Personnel Code Article VIII, <u>Section 2</u> and its provisions for severance pay. <u>Id.</u>

The termination form plaintiff later received from the City listed the "reason/code for separation" as "Layoff/Budget." The City Personnel Code states with regard to "Short Term Reduction in Force: Lay Offs" in Article VIII, <u>Section 1</u>:

> A lay off is a temporary reduction in the work force due to a shortage of funds, lack of work, abolishment of a position or other material change in duties or organization. It differs from other forms of separation in that there is an anticipated reinstatement of the employee as soon as the conditions which necessitated the lay off are ameliorated.

The City Personnel Code also provides in Article VIII, <u>Section 1</u>, that employees laid off shall be placed on a reemployment eligibility list and given first consideration when a vacancy occurs in the same or similar position the employee last held. But, under Article VIII, <u>Section 2</u>, employees who are eligible for recall are not eligible for severance pay. Plaintiff

received substantial severance pay (approximately $80,000) shortly after her job was eliminated.

Bonaparte described the job reductions in a letter to the Mayor and City Council in July 2010 as follows:

> During 2010, it became imperative that we resize the organization to fit the "new normal" of the current economic situation. We have done so, as indicated above, through short-term tactical changes in the way we do business, cutting management positions by more than 14%, and reducing the overall workforce by more than 11% through a combination of position elimination and holding positions open for the next 18 months.

Plaintiff's job duties as DCSS were divided up and given to other employees. Some narrative statements in city budget documents continued to refer to the DCSS position. But, the DCSS position was shown on a list of abolished positions published by the City and later personnel schedules did not list the DCSS position.

After losing her job as DCSS in February 2010, plaintiff sent a letter to Jacque Russell in October 2010 expressing interest in a Deputy Fire Chief position which was formally posted in January 2011. She also included her resume. She did not fill out a formal employment application, but she asked to be notified if there was anything else she needed to do. Specifically, plaintiff's letter stated: "Please keep this request on file and notify me of any currently open or upcoming open management positions within the Topeka Fire Department."

The City did not make any response to this letter or notify plaintiff of open positions.

The posting for the Deputy Fire Chief position stated that it was open to Fire Department employees only. Plaintiff was not a Fire Department employee. The minimum qualifications for the position included eight years of chief officer/company officer-level experience as Captain, Battalion Chief and/or Shift Commander. Plaintiff never held the position of Captain, Battalion Chief or Shift Commander. Plaintiff was not hired for the spot.

Applications for an open position as Training Officer were accepted until June 24, 2011. After the deadline, on July 20, 2011, plaintiff wrote a letter expressing interest in the position and included her resume. She did not submit a formal employment application. The position was open only to Fire Department employees. Plaintiff was not a Fire Department employee at that time. Plaintiff was not hired for the position.

The Deputy Fire Chief position again fell open in November 2011. The posting for the position stated that it was open to Fire Department employees only. The position required five years of chief officer/company officer-level experience as Captain, Battalion Chief and/or Shift Commander. On November 28, 2011, plaintiff sent a letter stating that she was applying

for the position, but she did not submit an electronic employment application as required by the job posting. The letter also came after the November 23, 2011 deadline for applications. The City appointed Neil Hix to fill the Deputy Fire Chief position. Hix did not apply for the position, but was selected by the City Fire Chief to fill it.

The City Fire Chief position became open on December 23, 2011. Applications were accepted through November 23, 2011. Interim City Manager Dan Stanley stipulated that the position was open only to Fire Department employees. Stanley appointed Greg Bailey as the Interim Fire Chief while the application process was ongoing. City ordinances allowed external candidates to be hired as Fire Chief and as an entry level fire fighter, but required that all other Fire Department positions be filled by internal candidates. Stanley decided to exclude external candidates from the Fire Chief position because he believed that the previous selection of an external candidate had created friction and animosity within the Fire Department. After the deadline, plaintiff submitted a letter of interest on November 28, 2011. She did not submit an electronic application. Of course, she was not a Fire Department employee at that time.

Stanley decided to pick Greg Bailey, whom he had appointed as Interim Fire Chief, to be the permanent Fire Chief. Bailey

had not applied for the position.  It is undisputed that Stanley had the legal authority to circumvent the application process and make the appointment.

Females make up approximately 4% to 5% of the Topeka Fire Department workforce.  The percentage is slightly higher than the percentage of females employed by fire departments nationally.

Additional uncontroverted facts may be included in the court's discussion of the legal arguments in this case.

III.  BURDEN-SHIFTING FRAMEWORK

There is no <u>direct</u> evidence that gender discrimination or retaliation motivated the adverse employment actions alleged by plaintiff.  Therefore, the court must apply the burden-shifting framework established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973) in analyzing plaintiff's claims of discriminatory treatment and retaliation.[1]  This requires the court to consider whether indirect evidence of discrimination or retaliation creates a material issue for trial.  Under <u>McDonnell Douglas</u>, plaintiff must first present a prima facie case of discriminatory treatment or retaliation.  "In the context of summary judgment, the <u>McDonnell Douglas</u> framework requires a

---

[1] The court will assume that the rules and standards applicable to plaintiff's Title VII claim are generally applicable to plaintiff's state law claims under the KAAD.  See <u>Goico v. Boeing Co.</u>, 347 F.Supp.2d 955, 979 n.4 (D.Kan. 2004); <u>Munoz v. Western Resources, Inc.</u>, 225 F.Supp.2d 1265, 1269 (D.Kan. 2002).

plaintiff to raise a genuine issue of material fact on each element of the prima facie case, as modified to relate to differing factual situations." Rakity v. Dillon Cos., 302 F.3d 1152, 1164 (10th Cir. 2002).

In general, a prima facie case of discriminatory treatment requires proof of: 1) membership in a protected class; 2) an adverse employment action; and 3) disparate treatment among similarly situated employees. Carney v. City and County of Denver, 534 F.3d 1269, 1273 (10th Cir. 2008). To present a prima facie case of discriminatory treatment in hiring plaintiff must demonstrate that: 1) she belongs to a protected class; 2) she applied for and was qualified for a job for which the employer was seeking applicants; 3) despite her qualifications, she was rejected; and 4) after her rejection, the position remained open and the employer continued to seek applicants from persons of plaintiff's qualifications. McDonnell Douglas, 411 U.S. at 802; Garrison v. Gambro, Inc., 428 F.3d 933, 937 (10th Cir. 2005). A prima facie case of retaliation requires proof that: 1) plaintiff engaged in protected opposition to discrimination; 2) she suffered an action that a reasonable employee would have found materially adverse; and 3) there was a causal nexus between the opposition to discrimination and the adverse action. Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 998 (10th Cir. 2011).

If plaintiff produces a prima facie case of discriminatory treatment or retaliation, the burden then shifts to the employer to produce a legitimate, nondiscriminatory justification for taking the disputed employment action. Id. If the employer meets this burden of production, then the burden shifts back to plaintiff to provide evidence showing that the proffered reason for the adverse action is a pretext for discrimination or retaliation. Id. Upon a summary judgment motion, plaintiff has the burden of showing that a rational factfinder could determine that the employer's proffered reason was so inconsistent, implausible, incoherent or contradictory that it is unworthy of belief. Bausman v. Interstate Brands Corp., 252 F.3d 1111, 1120 (10th Cir. 2001)(quoting, Olson v. General Elec. Astrospace, 101 F.3d 947, 951-52 (3d Cir. 1996)(further quotation and citation omitted)). In evaluating pretext, the relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs. Bullington v. United Air Lines, Inc., 186 F.3d 1301, 1318 (10th Cir. 1999).

IV. ANALYSIS OF PLAINTIFF'S DISPARATE TREATMENT AND RETALIATION CLAIMS

A. Plaintiff's claim that her termination constituted illegal disparate treatment must fail.

Plaintiff's termination argument is not so much that the City did not have budgetary reasons to terminate employees, as

12

that the City had discriminatory reasons to terminate plaintiff (as opposed to other employees) as it responded to its financial shortfall.  In other words, plaintiff admits that defendant had a legitimate, nondiscriminatory, nonpretextual reason for eliminating plaintiff's job.  But, plaintiff contends that sex discrimination was part of the process of selecting plaintiff's position for elimination.  Plaintiff has no persuasive evidence to support this contention.

Plaintiff makes a number of points in support of her argument:  1) that the City could have eliminated the Deputy Chief of Operations position instead of plaintiff's position; 2) that a female IT Department Manager was laid off at the same time as plaintiff even though a list produced by the City showed no savings from the action; 3) that plaintiff's position was not mentioned in memoranda and correspondence addressing possible reductions in force written prior to her termination; and 4) that plaintiff received some assurances that her job was safe. Doc. No. 148, pp. 33-37.  These points are inadequate to create a material issue of fact as to plaintiff's termination claim for the following reasons.

Plaintiff has not produced an inference of discrimination by comparing her treatment with that of a similarly situated male employee.  Plaintiff suggests that the City could have eliminated the Deputy Chief of Operations (DCO) position which

was occupied by a male. But, plaintiff provides no proof that the DCSS and the DCO positions were similarly situated. The two positions had different titles, duties and qualifications. It is undisputed that the DCO position had oversight over the suppression division of the fire department. See Doc. No. 146, uncontroverted fact # 14. This was not plaintiff's role as DCSS. At the time of her termination, plaintiff's "management analyst" duties were significantly different. It is also undisputed that applicants for the Deputy Fire Chief position which remained after plaintiff's position was eliminated, were required to have experience as a Captain, Battalion Chief and/or Shift Commander that plaintiff was not required to have as DCSS. See Doc. No. 146, uncontroverted facts ## 97, 98, 111 and 115. In sum, plaintiff has not shown that similarly situated male employees kept their jobs or otherwise produced evidence which would show that defendant intended to discriminate against plaintiff on the basis of her sex in deciding to terminate her position as DCSS. Rather than create an inference of discrimination, plaintiff merely invites the court to second guess defendant's management decisions as it faced a serious budgetary situation.

Plaintiff makes reference to the termination of a female IT Department Manager; an action that plaintiff alleges produced no budgetary savings. This does not prove a discriminatory motive

with regard to the elimination of plaintiff's position which did produce budgetary savings. Nor does it deny that the City accomplished significant savings by eliminating plaintiff's position in addition to many others. Plaintiff simply provides too little information in the particular instance of the IT Department Manager to support an inference of discrimination.

Plaintiff also fails to prove discrimination by referring to statements to the effect that plaintiff's appointment as a "management analyst" was indefinite or of unknown duration, or that her position was secure as of November 2009. There is no indication that these statements were knowingly false or that for some reason they were meant to disguise sex discrimination. Also, the fact that plaintiff's position was not specifically proposed for elimination in memos written prior to the reduction in force does not prove discrimination or support an inference of discrimination. A memorandum written by Dennis Taylor for the City Manager's consideration in making reduction-in-force decisions does not mention plaintiff's DCSS position. Doc. No. 148-8, Ex. 150. But, it does not specifically designate any management position for elimination or for preservation. The memo merely provides information for the City Manager to consider. All of this evidence is not significantly probative of discrimination and merely asks a factfinder to engage in speculation.

Finally, plaintiff attempts to create an inference of discrimination by contending that defendant has made inconsistent or confusing explanations of its job actions. The Tenth Circuit has recognized that in some cases an attack upon an employer's explanation for a job action may create a material issue of fact regarding discriminatory motive when: 1) the attack raises a genuine issue as to the validity of any nondiscriminatory reason for the employer's action; 2) the explanation is so fishy or suspicious, the employer lacks all credibility; 3) the employer raises many reasons for its action and the plaintiff raises substantial doubt about a number of them; 4) the plaintiff discredits the employer's objective reasons, leaving only subjective reasons for the employer's decision; or 5) the employer has changed its explanation under circumstances that suggest dishonesty or bad faith. Jaramillo v. Colorado Judicial Dept., 427 F.3d 1303, 1310 (10th Cir. 2005). None of these situations arise here.

The primary reason given for the termination of plaintiff's DCSS position has been the financial problems facing the City. This is the reason listed in the letter informing plaintiff of the job action. Plaintiff has not discredited this explanation at all. Dennis Taylor recommended that plaintiff's position be selected for the reduction in force because it seemed less critical than other positions and it offered significant

savings.  This reasoning also has not been discredited.
Plaintiff has cast doubt upon a statement made by an attorney
for the City who suggested in response to an administrative
request for information that plaintiff's work as DCSS had been
completed.  See Doc. No. 146, uncontroverted fact # 148.  That
statement does not appear correct.  But, this is not sufficient
to suggest that the City's reasons for eliminating plaintiff's
job were fishy, suspicious, inconsistent or suggestive of an
illegal animus.

In summary, the court finds no reasonable grounds on this
record for a jury to hold that plaintiff was terminated because
of her sex.  Therefore, summary judgment is warranted against
plaintiff's termination claim.  See McGowan v. City of Eufala,
472 F.3d 736, 747 (10th Cir. 2006)("If the reason for the claimed
adverse action does not flow from a discriminatory motive, it
lacks the requisite causal connection to the adverse action.").

B.  Summary judgment must be granted against plaintiff's
failure to hire claims.

Plaintiff contends that she suffered sex discrimination or
retaliation because she was not considered for four positions
within the Fire Department following the February 11, 2010
elimination of her DCSS position.  These positions were:  the
Deputy Fire Chief position in January 2011, the Training Officer
position in June 2011, the Deputy Fire Chief position in

17

November 2011, and the Fire Chief position in November 2011. Plaintiff is not alleging disparate treatment as to the November 2011 Deputy Fire Chief and Fire Chief positions, only retaliation and disparate impact.

It is uncontroverted that plaintiff was not a Topeka Fire Department employee after she was terminated from the DCSS position on February 11, 2010. Plaintiff does not dispute defendant's proposed uncontroverted facts #96, #104 and #128 which state that plaintiff was not a Fire Department employee in January 2011, June 2011 and November 2011. See Doc. Nos. 146 and 148. Plaintiff also lists as a proposed uncontroverted fact (#206) that she did not have access to the job postings for Deputy Fire Chief, Training Officer and Fire Chief positions because she no longer worked for the City. Doc. No. 148. No action was taken to return plaintiff to employment with the City between February 11, 2010 and January 2011. Obviously, she was not a Fire Department employee because she had been terminated on February 11, 2010. Plaintiff's receipt of a large severance pay award buttresses this conclusion.

It is further uncontroverted that to be eligible to be hired for the Deputy Fire Chief openings in January 2011 and November 2011 or the Training Officer opening in June 2011, an applicant had to be a Fire Department employee. See Doc. No. 146, uncontroverted fact # 88. This requirement derives from

Charter Ordinance No. 10 as construed in <u>Bradshaw v. City of</u> <u>Topeka</u>, Case No. 08-C-599 (Shawnee County Dt. Ct. 5/28/2009). Since plaintiff was not a Fire Department employee at the time of those openings, plaintiff was not qualified to be hired to those positions. Therefore, plaintiff cannot prove a prima facie case of discriminatory treatment or retaliation as to those positions.

Similarly, plaintiff cannot demonstrate a prima facie case of retaliation with regard to the Fire Chief position. Although Charter Ordinance No. 10 permitted external candidates to be hired as Fire Chief, it is undisputed that the job posting in November 2011 was limited to Topeka Fire Department employees. See Doc. No. 146, uncontroverted fact # 124. This was the Interim City Manager's stipulation in order to limit friction within the Fire Department. It is also uncontroverted that the Interim City Manager ultimately decided not to hire through the recruitment and application process and instead appointed the Interim Fire Chief to be the Fire Chief. The appointee had been a Fire Marshall in the Fire Department before being made Interim Fire Chief. While plaintiff could not be considered a rank outsider, because she was not a Fire Department employee at the time the Fire Chief position was being filled, plaintiff cannot demonstrate that she was qualified for the position according to the undisputed requirements of the defendant.

Defendant has elaborated that after plaintiff's termination plaintiff was not hired or rehired to a different position with the Fire Department (or she cannot prove in this litigation that she was eligible to be hired) because she did not make formal application, she did not make a timely application, and, in some instances, she did not have the requisite qualifications. None of these alternative explanations or arguments have been proven to be so inconsistent, suspicious or dishonest that they can be considered evidence of pretext. Indeed, they cast significant doubt upon plaintiff's ability to recover if she were to proceed to trial upon any of her claims regarding the Training Officer, Deputy Chief or Fire Chief positions.

C. Summary judgment is warranted against plaintiff's claims that she was discriminated and retaliated against because she was not considered eligible for placement on a reemployment list.

Plaintiff alleges that she was treated adversely and discriminated or retaliated against because she was not considered eligible for reemployment with defendant in the same manner as employees who are temporarily laid off. Article VIII of the Personnel Code of the City of Topeka distinguishes between a "Short Term Reduction in Force: Lay Offs" in Section 1 of Article VIII and "Permanent Reduction in Force: Severance Pay" in Section 2 of Article VIII. The Code describes a "lay off" in Section 1 as "a temporary reduction in work due to a

shortage of funds, lack of work, abolishment of a position or other material change in duties or organization" which "differs from other forms of separation in that there is an anticipated reinstatement of the employee as soon as the conditions which necessitated the lay off are ameliorated."  Doc. No. 148-5. Section 1 sets out performance and seniority criteria for determining which employees will be laid off and criteria for laid-off employees to be placed on a "reemployment eligibility list" and given "first consideration when a vacancy occurs in the same or similar position [as] the employee last held."  Id. Section 2 describes the procedures for offering severance pay to employees "who have lost their job through no fault of their own" and who have lost the right to recall, waived the right to recall or are not considered eligible for recall.  Id. Employees who are eligible for recall are not eligible to receive severance pay.

Defendant did not treat plaintiff as eligible for placement on the reemployment list.  Defendant offered plaintiff severance pay and plaintiff accepted it.  Plaintiff contends that she should have been placed on the reemployment list because, among other reasons, her job was abolished due to a shortage of funds. She also notes that the termination form she received marked "layoff/budget" as the grounds for termination (although the

form did not list "permanent reduction in force" as a possible reason for termination).

It appears to the court that the job action taken against plaintiff is more reasonably considered as a permanent reduction in force under Section 2 of Article VIII than a short-term or temporary reduction in force under Section 1 of Article VIII. Therefore, defendant did not act unreasonably by failing to place plaintiff on a reemployment list and, instead, offering plaintiff severance pay. This will be discussed again in more detail later in this opinion. In any event, plaintiff does not attempt to show that plaintiff's treatment in this regard was different from how defendant treated similarly situated employees. So, even if defendant acted unreasonably, there are no grounds on this record to find that defendant's action was motivated by gender bias or retaliatory reasons. See Piercy, 480 F.3d at 1200 ("[e]ven a mistaken belief can be a legitimate non-pretextual reason for an employment decision"); Stover v. Martinez, 382 F.3d 1064, 1076 (10th Cir. 2004)(quoting Bullington, supra, for the proposition that courts should not inquire as to whether an employer's reasoning is wise, fair or correct, but whether the employer acted honestly and in good faith). Accordingly, summary judgment is warranted against plaintiff's claims that she was discriminated against or

retaliated against because of the defendant's failure to place plaintiff on a reemployment list.

IV.  SUMMARY JUDGMENT IS WARRANTED AGAINST PLAINTIFF'S DISPARATE IMPACT CLAIM.

Plaintiff states in her factual contentions in the pretrial order that she has raised a claim of disparate impact in violation of Title VII "regarding the Defendant's reliance on an ordinance requiring [defendant] to hire current employees for positions other than entry level firefighter and Fire Chief." Doc. No. 143, p. 11.  This refers to Charter Ordinance No. 10. Defendant argues for summary judgment against this claim for the following reasons:  1) plaintiff has failed to exhaust administrative remedies as to the Training Officer and both Deputy Fire Chief employment decisions; 2) the failure to hire plaintiff for the November 2011 Deputy Fire Chief position was not an application of Charter Ordinance No. 10; 3) the failure to hire plaintiff for the Fire Chief position in 2011 was not an application of Charter Ordinance No. 10; and 4) plaintiff cannot show the alleged policy or practice results in a legally significant disparity.

In response, plaintiff admits that this court has previously ruled plaintiff did not timely exhaust administrative remedies as to the Training Officer position and the January 2011 Deputy Fire Chief position.  Doc. No. 135, p. 9.  Plaintiff

argues that there is a disputed fact issue as to whether plaintiff timely exhausted administrative remedies regarding the November 2011 Deputy Fire Chief position. Plaintiff also contends that there is a disputed fact issue as to whether Charter Ordinance No. 10 was applied to the November 2011 Deputy Fire Chief position and the 2011 Fire Chief position opening. Finally, plaintiff refers to a city report which states that females are "greatly underutilized" within the Fire Department. This reference apparently responds to defendant's claims that plaintiff cannot show the alleged policy or practice has resulted in a legally significant disparity.

After reviewing these arguments, the court believes summary judgment is warranted against the disparate impact claim for the following reasons. First, the court has already ruled that plaintiff did not timely exhaust her administrative remedies as to any job action taken before December 5, 2011. This excludes the decisions to hire persons other than plaintiff for the Training Officer and January 2011 Deputy Fire Chief positions.

Second, summary judgment is justified as to any disparate impact claim regarding the Fire Chief position. The Charter Ordinance which plaintiff identifies in the final pretrial order as the policy under challenge did not limit the applicants for the Fire Chief position to internal candidates. The Charter Ordinance provides that external candidates may be hired to the

Fire Chief position.  The decision to exclude external candidates from consideration for the position was made by the Interim City Manager.  There is no evidence that this decision had any impact upon any other hiring decision for the Fire Department.  As defendant has noted, the Tenth Circuit has held that "[a] claim of discrimination resulting from the mode of filling a single position does not give rise to a disparate impact."  Coe v. Yellow Freight Sys., Inc., 646 F.2d 444, 451 (10th Cir. 1981).  So, plaintiff has no disparate impact claim as to the November 2011 Fire Chief opening.

As for the November 2011 Deputy Fire Chief position, we believe there is a material issue of fact as to whether plaintiff timely exhausted her administrative remedies upon this claim.  The record does not make it clear when the decision to reject plaintiff's "application" was communicated to plaintiff. The time period for bringing an administrative complaint does not begin to run until plaintiff had notice of the alleged adverse action.  See Proctor v. United Parcel Service, 502 F.3d 1200, 1207 (10th Cir. 2007).  In addition, we believe an issue of fact exists as to whether the requirement that only internal candidates be considered for the position stems from the policy set forth in Charter Ordinance No. 10.

Nevertheless, summary judgment must be granted against the disparate impact claim as it pertains to the November 2011

25

Deputy Fire Chief position because plaintiff does not have evidence supporting a prima facie case. "[A] plaintiff may establish a prima facie case of disparate impact discrimination by showing that a specific identifiable employment practice or policy caused a significant disparate impact on a protected group." Carpenter v. Boeing Co., 456 F.3d 1183, 1187 (10th Cir. 2006). This means a plaintiff must show that there is a legally significant disparity between the gender composition, caused by the challenged employment practice, of the pool of those enjoying a job or job benefit, and the gender composition of the qualified applicant pool. Id. at 1193 (quoting Crum v. Alabama, 198 F.3d 1305, 1312 & n.11 (11th Cir. 1999)). The proper comparison is between the composition of the at-issue jobs and the composition of the qualified population in the relevant labor market. Id. (quoting Wards Cove, 490 U.S. at 650-51)). It appears that plaintiff has no statistical evidence which would create the proper comparison involving the qualified population in the relevant labor market. Plaintiff's reference to a report remarking generally upon the "underutilization" of females in the Fire Department without addressing the qualified population in the labor market for Deputy Fire Chief or even for fire department employees in general does not suffice to make a prima facie case. This analysis would apply as well to plaintiff's Fire Chief claim.

Moreover, if plaintiff did not have the qualifications stipulated for the position of Deputy Fire Chief or if she did not submit a timely and proper application, then she may not have standing to bring a disparate impact claim challenging the policy set out in Charter Ordinance No. 10. See <u>Santana v. City and County of Denver</u>, 488 F.3d 860, 866 (10th Cir. 2007). As plaintiff does not dispute the facts alleged regarding her lack of required experience for the position of Deputy Fire Chief,[2] summary judgment is warranted.

## V. SUMMARY JUDGMENT IS WARRANTED AGAINST PLAINTIFF'S DUE PROCESS CLAIM.

Plaintiff alleges that she had a constitutionally protected property interest in being placed on a reemployment list and given preference for open positions for which she was qualified after she was terminated and the DCSS position was abolished. See Pretrial order, Doc. No. 143, pp. 10-11. Plaintiff asserts that this alleged property interest was denied to plaintiff without due process and therefore plaintiff is entitled to recovery under § 1983. Defendant contends that plaintiff's § 1983 claim is untimely because it was not raised within two years of the alleged violation. Defendant also contends that plaintiff did not have a property interest in being placed on a

---

[2] Plaintiff states that she had five years experience as DCSS, but not that she satisfied the listed requirements.

reemployment list. The court finds defendant's latter argument persuasive and shall not rule upon the limitations issue.[3]

Property interests are not derived from the Constitution, they "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law-rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972). Unlike many cases, plaintiff is not arguing that she had a property interest in maintaining her DCSS position. Instead, she is claiming that the job action taken against her should have been treated as a temporary layoff, not a permanent reduction in force, and consequently, under the terms of the City Personnel Code (Article VIII, Section 1), she was entitled to preferential consideration for reemployment. The court does not believe a reasonable jury could find in accord with plaintiff.

The letter plaintiff received when she was informed of the job action stated that her job was being eliminated due to a "permanent reduction in force." The letter made reference to the provisions in the City Personnel Code which concern a "permanent reduction in force," that is Article VIII, Section 2.

---

[3] The court also will not rule upon defendant's argument that plaintiff's acceptance of severance pay constitutes accord and satisfaction which bars any claim to placement on a reemployment list.

Of course, plaintiff received a substantial amount of severance pay. Severance pay is discussed in Article VIII Sections 1 <u>and</u> 2. But, it is not an entitlement for employees who lose their jobs as part of a "short-term reduction in force" or "lay off" as described in Section 1 of Article VIII, unless such employees sign a waiver of their right to recall. Doc. No. 148-5.

Plaintiff contends that there is a material issue of fact as to whether defendant intended plaintiff's dismissal to be permanent for several reasons. First, plaintiff notes that plaintiff received a check-the-box termination notice which listed the reason for her termination as "layoff/budget." Doc. No. 148-10. This is not evidence that plaintiff's termination was a temporary reduction in force because the form does not distinguish between "short-term" and "permanent" reductions in force. Neither term is listed among the form's choices for **"REASON/CODE FOR SEPARATION."** Indeed, the category **"REASON/CODE FOR SEPARATION"** does not attempt to describe whether the job action is short-term or permanent, only the reason for the job action. There is no dispute that budgetary reasons were given for plaintiff's termination. Thus, it was at least partially accurate to list the combined phrase "layoff/budget" as the reason for separation. It is also noteworthy that on the form plaintiff refers to the job action in her own writing as a dismissal, not a layoff. One could infer from plaintiff's

comment that it was understood that this was not a short-term reduction in force covered in Section 1 of Article VIII.

Second, plaintiff notes that the City said it "abolished" plaintiff's DCSS position. This does not reflect that the reduction in force was short-term. While Article VIII Section 1 states that a temporary reduction in the work force may be due to a "shortage of funds, lack of work, abolishment of a position or other material change in duties or organization," it does not imply that these reasons for a temporary job action are what distinguish a temporary reduction in force from a permanent reduction in force. The difference, according to Section 1, is whether "there is an anticipated reinstatement of the employee as soon as the conditions which necessitated the lay off are ameliorated." Doc. No. 148-5. Here there is no evidence that it was anticipated that plaintiff would be reinstated.

Plaintiff makes other similar arguments which attempt to infer a lack of permanence in the job action from the reason for the job action. Plaintiff argues that the City eliminated her job because of a shortage of funds, lack of work, or material change in the organization. None of these reasons suggest that the reduction in force was short-term rather than permanent. A permanent loss of position could result for these reasons as much as a temporary reduction in force.

Plaintiff also references a memo from the City Manager to the Mayor and City Council in July 2010. The memo stated that "it became imperative that we resize the organization . . . through short[-]term tactical changes in the way we do business, cutting management positions by more than 14%, and reducing the overall workforce by more than 11% through a combination of position elimination and holding positions open for the next 18 months." Doc. No. 148-12. We do not read "short-term" or "the next 18 months" as modifying the clause "cutting management positions by more than 14%" and we do not believe it would be reasonable to do so in the context of this record, particularly the letter to plaintiff which described the job action as "permanent" and made reference to Section 2 of Article VIII which concerns "permanent reductions in force: severance pay."

Plaintiff's receipt of severance pay is also material evidence that plaintiff did not have a property right to be placed on a reemployment list. Both Section 1 and Section 2 of Article VIII indicate that eligibility for severance pay means ineligibility for recall or reemployment.[4] Section 1 states that "Employees who waive their right to recall shall immediately become eligible to receive severance pay." Doc. No. 148-5. Section 2 states that "Employees who are eligible for recall shall not be eligible to receive severance pay." Id.

---

[4] "Recall" appears to be another term for "reemployment" in Article VIII Sections 1 and 2.

Plaintiff argues that a material issue of fact is created because defendant has admitted that plaintiff was eligible "for rehire" as an entry-level firefighter and as Fire Chief. The court rejects this contention. Under city ordinances and the City Personnel Code, plaintiff was eligible to apply for an entry-level firefighter position or Fire Chief because the ordinances and the Personnel Code did not limit these positions to internal candidates.[5] Thus, as a person who was no longer employed by the Fire Department, plaintiff could apply for those positions. Whether this could be considered a potential "rehire," may be a matter of semantics. This does not imply, however, that plaintiff was eligible for preferential consideration as part of a reemployment list.

Finally, plaintiff contends that her work was not eliminated, instead it was divided up and given to other employees, and therefore, the job action was not permanent. This conflates the permanence of the job action with the permanence of the work. The work once assigned to plaintiff as DCSS may have continued forward in the hands of other employees, but plaintiff's job position as DCSS was permanently eliminated. Section 2 of Article VIII does not limit the reasons for making a permanent reduction in force to the five specific reasons

---

[5] Obviously, the City Manager could and did limit the applicant pool for the November 2011 Fire Chief position to current fire department employees, but this was not required by city ordinance or the Personnel Code.

listed in that part of the Personnel Code.[6]  Thus, plaintiff could have been permanently terminated from the Fire Department and could have been denied any right to reemployment under Section 2 of Article VIII for _any_ reason without violating the Due Process Clause of the Constitution.

In summary, the evidence and arguments before the court would not permit a reasonable jury to conclude that plaintiff had a property interest in being placed on a reemployment list.

VI.  CONCLUSION

For the above-stated reasons, defendant's motion for summary judgment (Doc. No. 145) shall be granted.  This action renders plaintiff's motion to amend/correct pretrial order (Doc. No. 157) and plaintiff's motion in limine (Doc. No. 129) moot.

**IT IS SO ORDERED.**

Dated this 25th day of October, 2013, at Topeka, Kansas.

_s/Richard D. Rogers_
United States District Judge

---

[6] Section 2 of Article VIII provides that severance pay may be provided to employees separated from their job "for reasons such as but not limited to the following:  1. An employee is not recalled from lay off . . .; 2. An employee voluntarily waives the right to recall . . .; 3. Work is eliminated and is not anticipated to be necessary in the foreseeable future; 4. Work is reassigned to other employees; or 5. The qualifications for a position change."